**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0054-24

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

BERNARDO RIVERA, a/k/a
BERNARDO ROACH,
and JOSE TORRES,

     Defendant-Appellant.

_____

          Submitted February 4, 2026 – Decided March 17, 2026

          Before Judges Berdote Byrne and Jablonski.

          On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 22-07-0639 and 22-07-0640.

          Jennifer N. Sellitti, Public Defender, attorney for appellant (Zachary G. Markarian, Assistant Public Defender, of counsel and on the briefs).

          Linda Estremera, Middlesex County Prosecutor, attorney for respondent (Hudson E. Knight, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

This appeal arises out of the trial court's denial of defendant's motion to suppress physical evidence, later resulting in his guilty plea and conviction. On appeal, defendant argues New Brunswick police officers failed to wear their statutorily required body-worn cameras (BWC) during a stop where they discovered a handgun under defendant's car. Defendant argues N.J.S.A. 40A:14-118.5(q)(2) entitles him to a rebuttable presumption the BWC footage that would have been captured would have favored the defense, and because the trial court failed to consider this at the motion to suppress hearing, we must grant a new hearing before a different judge. However, defendant did not raise this argument throughout two days of the suppression hearing nor prior to the entry of his guilty plea. Defendant raised the argument only at sentencing, fourteen months after his motion hearing. After careful review, we affirm.

I.

From the record before us, we understand that during the late evening of November 13, 2021, New Brunswick police officers, Kevin Sturmfels, Anthony Flores, and Detective Sean Freeman were patrolling the area of Quentin Avenue in an unmarked police car. The car did not have a Mobile Video Recorder camera, and the officers were not wearing BWCs as the department did not yet

2

have them.  The officers patrolled the area in plainclothes but wore other police identifiers, including vests with police insignia, pullovers with police insignia, and police badges on lanyards around their necks.

Sturmfels testified they were patrolling Quentin Avenue because it was a high-crime area.  While proceeding down Quentin Avenue, the officers passed Langley Place, a narrow two-way street running perpendicular to Quentin Avenue.  The officers observed a black 2019 Dodge Charger with window tint, idling and blocking the lane of passage.  Sturmfels said it caught the officers' attention because it was the only car present in the area.  The officers decided to circle the block, intending to stop the Charger from the opposite direction.

When the officers reached Langley Place where the Charger had been parked, it was no longer there.  They began searching for the vehicle.  Police found the car parked in the parking lot of the apartment building on 45 Quentin Avenue with the front of the vehicle facing the building.  The officers observed a man, later determined to be defendant, exit the vehicle from the driver's side and walk towards the hood.  Sturmfels noted the individual appeared nervous and his eyes got wide when he saw them. The officers parked behind defendant's car.  Defendant then appeared to bend down and make a tossing motion in front

A-0054-24

of the hood of his vehicle. The officers heard scraping against the pavement, "like a metallic sound."

Defendant then proceeded to the passenger side of the vehicle and toward the trunk. Sturmfels recognized him as defendant Bernardo Rivera from past interactions. Defendant opened the trunk and retrieved a backpack, slung it over his shoulder, and walked away quickly. Sturmfels exited the vehicle to further investigate. Sturmfels testified defendant was walking away from the vehicle when he shouted defendant's name to detain him and investigate whether defendant had discarded contraband from his person.

Meanwhile, Freeman and Flores approached the Charger, shining flashlights into the car, revealing three passengers. Freeman opened the rear passenger door and ordered the occupants to put their hands on their laps and they complied. Freeman testified he did not look under the car for the suspected contraband because he believed doing so would put him at a disadvantage to the people in the car.

Freeman called for backup and patrol officers arrived at the scene. After they arrived, Flores looked under the Charger and saw a handgun and a high-capacity magazine on the ground. Sturmfels arrested defendant and conducted a search incident to arrest, finding approximately $1,200 in cash, two cell

4

phones, an Apple Smart Watch, a digital scale, and clear, plastic sandwich bags in his backpack.

Sturmfels returned to the Charger and recovered a nine-millimeter gun from beneath it. Officers patted down the other occupants of the car and released them after finding no weapons or contraband. Freeman testified neither the gun nor the car were moved before pictures were taken. The Charger was searched pursuant to a warrant a few days later and additional weapons and ammunition were found in defendant's car pursuant to the search, with another handgun found stolen from South Carolina.

A Middlesex County Grand Jury indicted defendant on July 13, 2022, for two counts of second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1) (counts one and three); two counts of fourth-degree possession of a large capacity ammunition magazine, N.J.S.A. 2C:39-3(j) (counts two and four); one count of third-degree receiving stolen property, N.J.S.A. 2C:2-7(a) (count five); and one count of fourth-degree sale of handgun ammunition, N.J.S.A. 2C:58-3.3(b) (count six). A second indictment charged defendant with two counts of second-degree possession of a handgun by a certain person not to have a weapon, N.J.S.A. 2C:39-7(b)(1).

5

Defendant moved to suppress the physical evidence obtained during the warrantless stop and arrest. Sturmfels and Freeman testified at the hearing.

Despite mention in defendant's motion brief that he was entitled to a rebuttable presumption BWC footage would have benefitted his case, defendant did not raise the issue during the hearing. Instead, defendant argued the officers could not have accurately observed his actions in discarding the weapon from their position in the police car relative to him standing in front of the Charger. Additionally, defendant argued the concrete barrier at the front of the parking spot prevented him from throwing anything into the undercarriage area.

The trial court denied defendant's motion to suppress, finding the officers' testimony credible in that they had sufficient and particularized suspicion to conduct an investigatory stop, and defendant was properly arrested and searched. The trial court found it would be a "dereliction of duty if the police did not get out of the car and look underneath [it]."

On January 6, 2023, defendant entered a guilty plea to second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1), and second-degree certain persons not to possess a weapon, N.J.S.A. 2C:39-7(b)(1). In exchange for his plea, the State recommended eight years of imprisonment with forty-two months of parole ineligibility for the first count and five years of imprisonment

with five years of parole ineligibility for the second count, to run concurrently. At sentencing on February 6, 2024, defendant raised concerns that the officers had no BWC footage to support their version of the events for the first time and argued he was entitled to a new suppression hearing, which was rejected. The trial court found aggravating factors three (risk of another offense), six (extent of criminal record), and nine (need to deter defendant and others) applied, N.J.S.A. 2C:44-1(a)(3), (6), and (9), respectively, and no mitigating factors applied. It imposed the recommended sentence.

Defendant appealed the order denying his motion to suppress and his conviction. On appeal, defendant raises the following single contention:

POINT I
THIS COURT MUST REMAND FOR FACTFINDING BY A NEW JUDGE BECAUSE THE MOTION COURT FAILED TO APPLY THE STATUTORY REBUTTABLE PRESUMPTION THAT MISSING BODYWORN CAMERA FOOTAGE WOULD HAVE FAVORED THE DEFENSE.

We disagree and affirm.

II.

"When appellate courts review the grant or denial of a motion to suppress, they 'must defer to the factual findings of the trial court so long as those findings are supported by sufficient evidence in the record.'" State v. Caneiro, 262 N.J. 288, 300 (2025) (quoting State v. Hubbard, 222 N.J. 249, 262 (2015)). "Only

when factual findings 'are clearly mistaken' can they be set aside." Ibid. (quoting Hubbard, 222 N.J. at 262). "We accord no deference, however, to a trial court's interpretation of law, which we review de novo." Ibid. (quoting State v. Dunbar, 229 N.J. 521, 538 (2017)).

Defendant argues the officers failed to comply with the statute requiring them to wear BWCs, imposing a rebuttable presumption that the missing footage would have favored the defense. The State argues the presumption should not apply because defendant did not raise the issue prior to or at the motion hearing, and if he had, the State would have overcome the presumption.

"The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution, in almost identical language, protect against unreasonable searches and seizures." Caneiro, 262 N.J. at 300 (quoting State v. Smart, 253 N.J. 156, 164 (2023)). Indeed, "[u]nder both constitutions, 'searches and seizures conducted without warrants issued upon probable cause are presumptively unreasonable and therefore invalid.'" Ibid. (quoting State v. Goldsmith, 251 N.J. 384, 398 (2022)). It is well recognized, "[t]o overcome that presumption under both constitutions, the State must show by a preponderance of the evidence that the search falls within one of the well-

A-0054-24

recognized exceptions to the warrant requirement." Id. at 300-01 (alteration in original).

In an effort to further protect individuals' privacy rights, our Legislature enacted a statute requiring law enforcement officers to wear BWCs while engaged in the performance of their official duties with few exceptions. N.J.S.A. 40A:14-118.3. This requirement was made "subject to the limit of funds appropriated or otherwise made available for this purpose." Ibid. The statute became effective on June 1, 2021, five months prior to the events giving rise to this appeal. If BWCs are not worn during an interaction with a defendant, a rebuttable presumption arises that the missing footage would have favored defendant's case. N.J.S.A. 40A:14-118.5(q)(2) to (3).

Rule 2:6-2 restricts our review to questions or issues presented in the record to the trial court. See also J.K. v. N.J. State Parole Bd., 247 N.J. 120, 138 n.6 (2021).

> Generally, an appellate court will not consider issues, even constitutional ones, which were not raised below, however the limitation on the scope of appellate review is not absolute. If [t]he issue is an important one of public concern and ought [to] be considered; there is no question as to [the Appellate Division's] power to do so.
>
> [State v. Dangcil, 248 N.J. 114, 132 n.4 (2021) (citations omitted).]

Although we have the discretion to consider matters meeting the plain error standard espoused in Rule 2:10-2, we generally decline to do so when the opportunity to object was available below. "Plain error has intentionally been created as a high bar for parties to meet in order to encourage litigants to raise any objections to evidence at the trial level where the court can best 'forestall or correct a potential error,' in a timely manner." State v. Santamaria, 236 N.J. 390, 409 (2019) (quoting State v. Bueso, 225 N.J. 193, 203 (2016)). "[E]ven if it were error, a party cannot strategically withhold its objection to risky or unsavory evidence at trial only to raise the issue on appeal when the tactic does not pan out." Ibid.

Here, defendant did not raise his concerns at the hearing on the motion to suppress the evidence, or until after he had entered his guilty plea and returned for sentencing. Defendant had the opportunity to assert the rebuttable presumption issue both during the suppression motion and before entering his guilty plea but failed to do so. Until sentencing, defendant argued only that the officers did not meet their burden in establishing the application of certain exceptions to the warrant requirement applied. Thus, although defendant argues the trial court erred in not considering this presumption, he did not raise it until after he had pleaded guilty to the crime.

A-0054-24

We have previously concluded the existence of this rebuttable presumption does not apply automatically, but only on defendant's presentation of the issue, absent here. State v. Jones, 475 N.J. Super. 520, 535 (2023) ("Issues pertinent to whether defendant is entitled to the rebuttable presumption under N.J.S.A. 40A:15-118.5(q)(2), and whether the State can successfully rebut the presumption . . . shall abide the presentation of the parties' arguments and evidence and shall be decided in the first instance by the motion court . . . ."). The statute contains similar language requiring a defendant to "reasonably assert that exculpatory evidence was destroyed or not captured." N.J.S.A. 40A:14-118.5(q)(2) (emphasis added).

The State further argues even if the presumption had been applied, it was rebutted by the well-known exceptions to warrantless searches that allowed them to legally collect the gun as evidence. Of the well-recognized exceptions to a warrantless search and seizure, the State argues four applied. First, it argues it reasonably conducted an investigatory stop. Second, it contends defendant abandoned the gun when he walked away from it, eliminating standing to object to the search and seizure of property. Third, it asserts the gun was lawfully recovered under the plain-view doctrine. Fourth, it claims the gun was properly recovered under the inevitable discovery doctrine.

Although defendant argued none of these exceptions applied at the motion to suppress hearing, he did not renew those arguments on appeal.  An issue not briefed on appeal is deemed abandoned.  State v. Huang, 461 N.J. Super. 119, 125 (App. Div. 2018).  As such, defendant offers no argument to address the State's position that, if the presumption had been considered, the State would have easily been able to rebut it.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

12

A-0054-24